Case number 20-1014, et al. Trinity Services Group, Inc., petitioner v. National Labor Relations Board. Mr. Miner for the petitioner. Ms. Isbell for the respondent. Mr. Miner, whenever you're ready. Thank you, Your Honor. Good morning. My name is Fred Miner. I represent the petitioner v. National Labor Relations Board, Inc., Petitioner v. Trinity Services Group, Inc. This is a petition for review of a split decision by the National Labor Relations Board. The case involves an isolated discussion in which an employee brought to her manager's attention an alleged discrepancy in her accrued paid time off. The amount of PTO reported on the available to her. She testified in translation from Spanish that the manager said this was a problem her union caused. She needed to fix the problem with the union. The employee replied there was no problem. She said everything is okay. She understood the manager was not responsible for the PTO tracking system. A majority of the three board member panel nevertheless found a violation of section 81 of the National Labor Relations Act, concluding the manager blamed the union for an error that was attributable to Trinity. Section 81 of the act prohibits communications that are coercive and section 8c affirmatively protects communications that are not threatening. Under the board's precedents, absent coercion, even false and highly offensive statements are insufficient to find a violation of the act. The statement here was neither. Most Mr. Minor, how would you distinguish our recent precedent in the ingredient case? There, the court seemed to hold that a misleading comment could constitute a violation of the act of a day one. I mean, the board found here that there was a misleading comment and relied on ingredient. The board found a misleading comment, your honor, absent any type of coercion and under very different circumstances. The ingredient case involved ongoing collective bargaining in which a manager told employees or an employee that he should hold off applying for retirement because a better retirement package would be coming along in the future as a result of bargaining. And therefore the employee should urge the union to come to the bargaining table and get serious about the bargaining process. That simply was not the case here. In ingredient, the union stood in the way, or the employer claimed the union stood in the way of a superior retirement benefits package by making a misstatement, a false statement about the status of the bargain. In ingredient, do you think there was the promise of a benefit? There was an implicit promise of a benefit that constituted direct dealing with this employee. It was affirmatively and independently unlawful for the manager to pull this employee aside and assure him of a better retirement package in the future. And we don't have any similar promise of a benefit on the facts here. That's absolutely right, Judge Rao. There is no promise of any benefit. There was no threat of any retaliation. To the contrary, the employee received the PTO that she was entitled to. The misunderstanding that's being asserted here is simply a reporting error. The employee claimed that she had a different number of PTO days accrued on her pay stub. Unfortunately, that was incorrect. She did not have as many days available as she thought. She did receive her PTO. The manager did not suggest otherwise. I think it's also important to recognize that here, the manager told the employee to go to the union representative. This is a problem the union can fix for you. The manager did not denigrate the union status as her exclusive representative. To the contrary, he appeared to believe that this was something the union could assist her with. With respect to the misstatement involved, Your Honor, I also would add that just as the dissenting member, Chairman Ring, found here, the nature of the misstatement did not involve a claim of a loss of benefit or other adverse employment action. The issue that the union caused, according to the manager, was an issue relating to a reporting error that he believed was caused by confusion and complexity in the PTO benefit itself. Do you think does Section 8C protect misstatements or misstatements of fact? Thank you, Judge Rao. Yes, it does. It protects those statements even if there are errors, even if they are offensive misstatements and denigrating of the union. We've cited several of those cases in our brief. The one thing 8C does not permit is coercion. It specifically refers to threats of reprisal or force of promise of benefit. That is specifically not what occurred here. With respect to this issue of confusion, as Chairman Ring found, the manager's report or the manager's statement was quickly followed by the employee's acknowledgement. I know you are that take care of the PTO system. The employee involved knew that local managers did not have control over the reporting system that resulted in the confusion that she found. She did not believe that the union was responsible for reporting PTO accruals. This was an issue she observed on her pay stub. No reasonable employee would attribute to her union representative an alleged misstatement on a payroll stub. Was this exchange, this alleged exchange, did that take place during contract negotiations? Thank you, Judge Randolph. It occurred after the bargaining session at which the company presented its last best offer for a new contract to the union. I think it's also important to... Just to follow up, one of the contentions, back and forth, I may be wrong about this, in the contract negotiations was a revision of this whole system that was unique in determining paid time off. Is that right? That's correct, Judge Randolph. This particular employee was someone who was active in the union. She attended most of the bargaining sessions that were held between the committees for Trinity and the union. She knew that Trinity and the union had reached agreement on terms for a new PTO article that would provide the same PTO benefits other employees within the organization received. The purpose of that was to prevent the type of administrative complexity and confusion that was caused by this one... What I'm wondering is whether this is even a misstatement, because if in fact it was made, the one meaning is, listen, one of the reasons that your pay stub is different than our calculations is because this thing is so complex and we've told the union that we ought to straighten it out and get a simpler system. That kind of a statement could go tell the union to stop this discrepancy. Your Honor, we agree with that statement. The manager asserted a problem of confusion that he attributed to a unique benefit provided by this particular collective bargaining agreement. It was not false or improper to assert the union was responsible for creating a separate PTO benefit that was different from the PTO offered to every other Trinity employee nationwide. It was a confusing program. The PTO program under the expired collective bargaining agreement provided for a lump sum accrual at the beginning of the year, followed by monthly accruals during the course of the year up to an established cap. It was a misstatement. I think that's illustrated by the misstatement in the board's brief at pages four and five about how that accrual process worked. Any further questions, Judge Randolph? Mr. Minor, we'll give you a few minutes for rebuttal. Thank you, Your Honor. May it please the court. Kelly Isbell here on behalf of the National Labor Relations Board. First, I think we should talk about exactly what unit manager Rivera said to Ms. Victoria. He said, that is the problem the union created regarding PTO. You need to fix that with the union. When she said, I know you didn't do it, but the company should make sure we get our accrued leave. He said, that's the problem with the union. The cases, board and court cases, have long distinguished between misleading statements that tend to undermine confidence in or support of the union. We distinguish between those kinds of statements and disparagement of the union or even vituperative speech in situations where- Ms. Isbell, so that statement that you want to focus on, does it include any threat or promise of a benefit? The board did not find that it did. And under Ingridion, for example, I don't think the board needed to find that it had a threat or a promise of benefit. A misstatement is a separate category of violation under 8A1. It's a coercive misstatement. There does not have to be... Section 8C protects opinions and force or promises of benefits. But this court was clear in Ingridion, based on language in the Supreme Court's decision in Gissel, that there does not have to be a threat. The issue is not whether or not there was a threat. The issue is whether or not there was a misleading statement. To any case that holds a misleading statement is not protected by 8C, that also did not include a threat or a promise of a benefit. Because I think in Ingridion, there was a promise of a benefit. So there's some language in that case that suggests that misleading statements alone might be sufficient, but arguably that's not consistent with the text of 8C and it's not consistent with the facts of Ingridion, which also included a promise of a benefit. Well, Ingridion, I'm not sure I agree that the statement made in Ingridion was also a promise of a benefit. The statements were about you should bring the union to bargaining. Miller Waste, which was enforced in the Eighth Circuit, is also another case where there wasn't really any adverse action or... Well, in that case, they ended up giving the... They suggested they would not give a wage increase and in the end, they did. And then there's Westminster. That's what I'm thinking of. Sorry. Westminster Community Hospital. That was just a case where the employer said, we can't give you better leave or better wages because we have an ironclad contract with the union and it's the union's fault. We can't give you better wages. And that case is very similar to... So that's sort of a threat or the withholding of a benefit? Well, in this sense, I mean, the board did not find that there was a threat in that case. And in this case... What about the withholding of a benefit? The fact that we can't raise wages because of the union or because of our contract with the union does suggest something that better fits within the text of 8C. It's not just purely a misleading statement. I couldn't find any cases where there was a misleading statement that was found to be a violation of the act where there was no... Where the facts didn't have a threat or a promise of a benefit. Well, I'm not sure that I agree about Westminster. They made the threat, or not made the threat, they made the comment, the misleading statement that the union kept them from giving better benefits, but there was no finding that there was an additional 8A1 violation that there was a threat or withholding. They were talking about it in the terms of misleading employees about what the union did or could do for them. How was this particular employee misled? I mean, she seemed to know how the thing was calculated. And actually, the individual she was talking to, she let off the hook and she was taking part in negotiations that involved this very system. What is the evidence that she was misled? Well, Judge Randolph, under Gord and this court's law, when looking at whether or not a statement was misleading or coercive, the board looks at it from an objective basis. We don't look at it from whether or not a particular employee was actually coerced. It's whether or not a reasonable employee could have been misled by the statement. So there's no evidence that she was misled. Is there any evidence that that statement misled any other employees? There is no evidence in the record that employees were actually misled, and there does not have to be evidence in the record that employees were actually misled. The question is whether or not a reasonable employee, whether the statement would tend to undermine the union, would tend to reduce... A reasonable employee with knowing all the relevant and material facts. That's the test, isn't it? It's not just a reasonable employee. It's a reasonable employee informed of all the circumstances. And that kind of an employee knows that it's not the union that decides what the amount of the PTO is. It's the employer. So where's the mislead? I just don't understand how a reasonable employee would be misled by this. Well, can I talk about this particular employee? Because there's been some suggestion that she had special knowledge. No, no, no. The answer to my And we have that kind of a rule in other areas, notably in the securities law area. But always, it is coupled with this statement that it's a reasonable employee informed of all the relevant facts and circumstances. And what I'm asking is that if you find that employee, that mythical employee, with knowing all the facts and circumstances, I can't imagine how they could be misled into thinking that the union was calculating the PTO. That's impossible. Tell me how that's possible. Our cases don't include that specific language, knowing all the facts and circumstances. Our cases talk about reasonable employees. And we can assume from an employee that would have a reasonable amount of knowledge of what was going on. But remember, these are food service workers. This is their only leave program. This is their sick leave. This was a very important issue to them. And they had been having trouble getting their correct leave balances for more than a year. There is no finding here that every employee understood exactly what was going on and why. They knew the grievances had been filed and that for an entire year, they had not been able to get their correct leave from this company. Ms. Victoria herself had attended some of the bargaining sessions, but the judge made explicit findings that she was not on the bargaining committee, she was not a union steward, and she did not have any special knowledge about what was going on. This happened in the context of bargaining where a tentative agreement had been reached on the issue of PTO at the time of this discussion, but the contract was open. The union, according to the factual findings in the decision, the judge found that the union rejected the last, best, and final offer. So the contract was still open at the time, and a contract was not reached until April of 2018, so four months after this discussion. I don't think that any employee at that point knew exactly what was causing the problems. The factual findings show that it was not attributable to the union. It was patently false that the union created the problem or that the union had any responsibility for the problem. But Ms. Isbell, even if it's a misleading statement, it might still be protected by 8C if there's no threat or promise of a benefit. I disagree, Your Honor. I mean, I think your arguments are all about whether, you know, it fits within the tests under 8A1, but that doesn't tell us whether it's protected speech for the employer under 8C. They're kind of two sides of the same coin. I agree, Your Honor, but I think the board's cases distinguish between disparagement and vituperative speech, things like Children's Center or Trailmobile, where a company says the union's wasting your money, the union steward's living it up at the Holiday Inn on your money. Those kinds of statements and statements that are misleading about what the union is doing for you and how hard the union is working for you. The board has long distinguished those kinds of cases. Well, but what would be left of an employer's right to have free speech if statements that were thought to be incorrect or false were not protected? I mean, the ability to make, you know, the ability to speak freely includes the ability to speak freely and be right if there is no threat or a promise of a benefit connected to that mistaken statement. It does to a degree, Your Honor. For example, if we're talking about an organizing situation under, say, Gissell, where an employer makes statements about how the plant down the street closed as soon as the union came in or the union's going to go out on truth may get you out of it, sometimes depending on the context and the statement itself, an objectively true statement. Is the union free to make misleading and false statements? Is that a violation of the National Labor Relations Act for a union official to do that? I think it can be. I mean, I'm thinking of cases where a union has misrepresented board procedures or misrepresented board, what the board has said about something that could be. I mean, off the top of my head, I can't think of any particular cases like this. Usually, it comes up in the context of initial organizing or negotiation bargaining where the employer is discussing things with employees. I see I've run out of time. There any more questions? Judge Randolph? No. Thank you, Mrs. Bell. Mr. Minor, we'll give you an additional two minutes. I think you are muted, Mr. Minor. Can't hear you. My apologies. Is that better? Yes. Yeah. I'd be glad to answer any additional questions that you or Judge Randolph has at this time. Thank you. I don't have any questions. Thank you, Your Honor. Thank you. Case is submitted.
judges: Garland, Rao, Randolph